UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW JOHN WICKEN,

                Plaintiff,

     v.

CAROLYN W. COLVIN,

                Defendant.

Case No. 15-cv-01124-RAJ

ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

## I.  INTRODUCTION

Plaintiff Andrew John Wicken seeks review of the partial denial of his application for disability insurance benefits. Mr. Wicken contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical evidence in the record, evaluating Mr. Wicken's credibility, and assessing Mr. Wicken's residual functional capacity ("RFC"). *See* Dkt. 7 at 1. As discussed below, the court REVERSES Defendant Commissioner Carolyn W. Colvin's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.  BACKGROUND

Mr. Wicken filed an application for disability insurance benefits, alleging disability as of November 29, 2008. *See* Administrative Record ("AR") 653. After Mr. Wicken's application

ORDER - 1

was denied and he received an unfavorable decision from an ALJ, Mr. Wicken filed a subsequent application with additional evidence and was determined to be disabled as of October of 2012. *See id.* Meanwhile, because the new evidence was not available at the time of the previous unfavorable decision, this Court reversed and remanded that decision for evaluation of the actual onset date of disability. *See id.* After the ALJ conducted a hearing on April 3, 2014, the ALJ issued a decision finding Mr. Wicken disabled as of June 1, 2011, but not before that date. *See* AR 653-63.

The ALJ utilized the five-step disability evaluation process,[1] and his findings are summarized as follows:

**Step one**: Mr. Wicken has not engaged in substantial gainful activity since the alleged onset date.

**Step two**: Since the alleged onset date, November 29, 2008, Mr. Wicken has had the following severe impairments: diabetes mellitus II and sensory peripheral neuropathy. Beginning on the established onset date of disability, June 1, 2011, these conditions worsened, particularly peripheral neuropathy.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual functional capacity**: Prior to June 1, 2011, Mr. Wicken could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations. He can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday; and can sit (with normal breaks) for a total of about six hours in an eight-hour workday with customary breaks and lunch. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to hazards (dangerous machinery, unprotected heights, etc.) and extreme cold. He should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.

Beginning on June 1, 2011, Mr. Wicken could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations. He can lift and/or carry

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

10 pounds occasionally and 10 pounds frequently; can stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday; and can sit (with normal breaks) for a total of about six hours in an eight-hour workday with customary breaks and lunch.  He should stand on average 15 minutes or less before being able to sit for about 10 minutes.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  He can never climb ladders, ropes, or scaffolds.  He should avoid concentrated exposure to hazards (dangerous machinery, unprotected heights, etc.) and extreme cold.  He should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.  He need to periodically (after about 30 minutes) alternate sitting with standing, but this can be accomplished by those work tasks requiring such shifts or can be done in either position for some or all of those work tasks.  Additionally, he would miss work two days a month due to pain or medical appointments.

**Step four**:  Mr. Wicken is unable to perform any past relevant work.

**Step five**:  Beginning on June 1, 2011, there are no jobs that exist in significant numbers in the national economy that Mr. Wicken can perform, so he is disabled as of that date and has continued to be disabled through the date of this decision.  Prior to June 1, 2011, there were jobs that existed in significant numbers in the national economy that Mr. Wicken could perform, and he therefore was not disabled.

*See* AR 656-62.  It does not appear from the record that the Appeals Council assumed jurisdiction of the case, making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.984.[3]

### III. ANALYSIS

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of disability benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A.  Evaluation of the Medical Evidence**

Mr. Wicken argues that the ALJ erred in evaluating the medical evidence in the record.  *See* Dkt. 7 at 2-8, 12-17.  The Court agrees in part.

---

[3] The court omits the rest of the procedural history because it is not relevant to the outcome of the case.

ORDER - 3

### 1. Listing 11.14 – Peripheral Neuropathies

Mr. Wicken first argues that the ALJ erred by failing to find that his impairments met the requirements of Listing 11.14 at step three of the sequential evaluation process. *See* Dkt. 7 at 2-8. The Court disagrees. At step three, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden of proof is on the claimant to establish that he meets or equals any of the impairments in the Listings and is therefore disabled. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

Here, the ALJ stated that Listing 11.14, Peripheral Neuropathies, was considered but not met because Mr. Wicken had "no significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." AR 656. Mr. Wicken argues that the examination findings of Gary Gaffield, D.O., establish the required sustained disturbance of gait and station. *See* Dkt. 7 at 3. Dr. Gaffield noted total paresthesias of both of Mr. Wicken's legs, resulting in a flailing, wide gait and the required use of a cane for balance. *See* AR 225-28. However, Dr. Gaffield still found that Mr. Wicken had full motor strength in his legs, with the exception of 4/5 strength in the ankles, and was able to stand and walk for two hours in an eight-hour workday. *See* AR 227-28. Furthermore, the medical record also contains findings from other physicians of normal range of motion, normal reflexes, and no motor deficits. *See* AR 241, 249, 389, 497. Therefore, substantial evidence supports the ALJ's finding that Mr. Wicken did not meet his burden of proving that he had the required persistent disorganization of motor function and sustained

disturbance of gait in Listing 11.14.

### 2. Opinion of Gary Gaffield, D.O.

Plaintiff also argues that the ALJ erred by failing to give sufficient reasons to discredit some of the functional limitations to which Dr. Gaffield opined. *See* Dkt. 7 at 4-8. The Court agrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

On August 19, 2010, Dr. Gaffield performed an evaluation of Mr. Wicken and provided a functional assessment. *See* AR 223-29. Dr. Gaffield assessed Mr. Wicken with several functional limitations, many of which were incorporated into the RFC by the ALJ. *See* AR 228, 656-57. However, the ALJ declined to incorporate Dr. Gaffield's opinion that Mr. Wicken required the use of a cane and could not sit for more than two hours in an eight-hour day. *See* AR 658. The ALJ then gave reasons why he was discrediting the requirement of a cane but did not give any reason for discrediting the sitting limitation. *See id*. Even inferring that the ALJ's statement that Dr. Gaffield's opinion was inconsistent with Mr. Wicken's self-reported activities applied to all the discredited limitations, substantial evidence does not support the conclusion that Mr. Wicken's attempts to help with housework and yard work showed that he was capable of sitting for more than two hours in a full workday. Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for discrediting part of Dr. Gaffield's opinion.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). The Ninth Circuit has noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id*. The court also has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id*. (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, because the ALJ improperly rejected the opinion of Dr. Gaffield in assessing the RFC and Mr. Wicken was found to be capable of performing work based on that RFC, the error affected the ultimate disability determination and is not harmless.

### 3. Opinion of David A. Dunnington, M.D.

Mr. Wicken argues that the ALJ erred by failing to give a sufficient reason for discounting the opinion of David A. Dunnington, M.D. *See* Dkt. 7 at 14-15. The Court agrees.

On February 21, 2011, Dr. Dunnington provided a statement in which he opined that Mr. Wicken could potentially work three to four hours a day in a sedentary job but that his diabetes would cause him to have "significant absenteeism" at any job. *See* AR 444. The ALJ gave this opinion some weight but failed to allow for any absenteeism in the RFC. *See* AR 656-67, 659.[4] The ALJ stated that the opinion was offered before a series of emergency room admissions later in 2011 and 2012, and so while Mr. Wicken's condition began to worsen at the time of the opinion, he "was still treating his neuropathy and he was not totally disabled." *See* AR 659. However, that Mr. Wicken's condition may have worsened after the opinion was offered in no way negates Dr. Dunnington's opinion of Mr. Wicken's capabilities in February of 2011. The ALJ's conclusory statement that Mr. Wicken was not yet disabled when the opinion was offered is an improper substitution of his lay opinion for that of a medical professional. *See McBrayer v. Sec'y, Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983) (finding that ALJ cannot arbitrarily substitute own judgment for competent medical opinion). Therefore, the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence to discount Dr. Dunnington's opinion.

### 4. Opinions of Tanner Vick, PA-C, and Ryan Guanzon, M.D.

Mr. Wicken argues that the ALJ erred by failing to discuss the opinions of Tanner Vick, PA-C, and Ryan Guanzon, M.D., as they related to the period before the established onset date of June 1, 2011. *See* Dkt. 7 at 15-16. The Court disagrees. Both opinions were offered after the

---

[4] While the ALJ mistakenly calls him "Dr. Cunningham," the ALJ's citation to the record reveals that the ALJ is discussing the opinion of Dr. Dunnington. *See* AR 659.

ORDER - 7

established onset date of Mr. Wicken's disability and contain no indications that they applied retrospectively.  *See* AR 542-46, 620.  Therefore, the ALJ did not err by failing to discuss the evidence, as it was not relevant to the period in question.

### 5. Opinion of Olegario Ignacio, M.D.

Mr. Wicken argues that the ALJ erred by giving significant weight to the opinion of non-examining physician Olegario Ignacio, M.D.  *See* Dkt. 7 at 16-17.  The ALJ gave significant weight to this opinion because the ALJ found that it was "consistent with the medical records."  *See* AR 659.  However, as discussed above, the ALJ did not properly evaluate the medical evidence in the record, so Dr. Ignacio's opinion should be re-evaluated on remand as well.

### B.  Evaluation of Mr. Wicken's Credibility

Mr. Wicken argues that the ALJ erred in assessing his credibility.  *See* Dkt. 7 at 9-12.  The Court disagrees.

Questions of credibility are solely within the control of the ALJ.  *See Sample*, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination.  *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  *Lester*, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester*, 81 F.3d at 834.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

ORDER - 8

Here, the ALJ discounted Mr. Wicken's credibility for several reasons, including that Mr. Wicken's daily activities were consistent with a sedentary RFC with additional limitations. *See* AR 657-58. The Ninth Circuit has recognized that daily activities may be used "to form the basis of an adverse credibility determination" when those activities can "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Here, the ALJ noted that Mr. Wicken was able to perform household chores, perform job searches throughout the day, watch his son, prepare meals, perform his own personal care, and go outside several times a day. *See* AR 146-48, 687-89, 693-94, 712-13. Despite testimony that Mr. Wicken would require breaks and other accommodations to perform these activities, the ALJ reasonably found that the sum of these activities was consistent with a sedentary RFC with additional limitations. *See* AR 657-58. Therefore, the ALJ provided a clear and convincing reason supported by substantial evidence to discount the credibility of Mr. Wicken's subjective complaints.

**C.  Remand for Additional Proceedings**

Because the ALJ erred in evaluating the medical evidence, the ALJ's RFC assessment does not necessarily completely and accurately describe all of Mr. Wicken's capabilities. Likewise, the hypothetical question presented to the vocational expert did not necessarily completely and accurately describe all of Mr. Wicken's capabilities. Therefore, the ALJ's step-five determination is not supported by substantial evidence and is in error.

The court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the

ORDER - 9

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is in "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy" that "remand for an immediate award of benefits is appropriate." *Id*.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, outstanding issues remain regarding conflicts in the medical evidence and the onset date of disability. Accordingly, the Court concludes that remand for further consideration is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's final decision and REMANDS this case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 5th day of April, 2016.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Court

ORDER - 10